# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACOLE GATLIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4055** |
| **KEITH DEVILLE, WARDEN** | **SECTION: "H"(1)** |

## REPORT AND RECOMMENDATION

Petitioner, Jacole Gatlin, a state prisoner incarcerated at the Winn Correctional Center in Winnfield, Louisiana, filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

The state court record reflects that petitioner was convicted of possession with intent to distribute marijuana under Louisiana law on September 13, 2013.[1] On September 18, 2013, he then pleaded guilty to being a second offender and was sentenced as such to a term of twenty years imprisonment without benefit of probation or suspension of sentence.[2] The Louisiana Fifth Circuit Court of Appeal thereafter affirmed his conviction and sentence on October 29, 2014,[3] and the Louisiana Supreme Court denied his related writ application on September 25, 2015.[4]

On September 30, 2016, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied on November 10, 2016.[6] His related writ

---

[1] State Rec., Vol. 4 of 4, transcript of September 13, 2013, p. 402; State Rec., Vol. 1 of 5, minute entry dated September 13, 2013.
[2] State Rec., Vol. 4 of 5, transcript of September 18, 2013.
[3] State v. Gatlin, 164 So. 3d 891 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 5.
[4] State v. Gatlin, 178 So. 3d 565 (La. 2015); State Rec., Vol. 1 of 5.
[5] State Rec., Vol. 1 of 5.
[6] State Rec., Vol. 1 of 5, Order dated November 10, 2016.

applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on December 15, 2016,[7] and by the Louisiana Supreme Court on April 6, 2018.[8]

On April 12, 2018, petitioner filed the instant federal application.[9]  The state filed a response conceding the application is timely but arguing that petitioner's claims do not warrant federal relief.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[7] Gatlin v. Deville, No. 16-KH-724 (La. App. 5th Cir. Dec. 15, 2016); State Rec., Vol. 1 of 5.
[8] State ex rel. Gatlin v. State, 239 So. 3d 287 (La. 2018); State Rec., Vol. 1 of 5.
[9] Rec. Doc. 3.
[10] Rec. Doc. 12.

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

3

<u>Id.</u> (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no

clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said

that the state court unreasonably applied clearly established Federal law."  <u>Wright v. Van Patten</u>,

552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one."  <u>Bell</u>,

535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court

precedent simply does not warrant habeas relief.  <u>Puckett v. Epps</u>, 641 F.3d 657, 663 (5th Cir.

2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect

application of the law by a state court will nonetheless be affirmed if it is not simultaneously

unreasonable.").

 While the AEDPA standards of review are strict and narrow, they are purposely so.  As the

United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable.
>  If this standard is difficult to meet, that is because it was meant to be.  As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's precedents.
> It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard
> against *extreme malfunctions* in the state criminal justice systems, *not a substitute
> for ordinary error correction through appeal.  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking in justification that
> there was an error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.*

<u>Harrington v. Richter</u>, 562 U.S. 86, 102-03 (2011) (emphasis added; citations omitted); <u>see also</u>

<u>Renico v. Lett</u>, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 572 U.S. 415, 417 (2014).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> On May 9, 2013, Detective Nicki M. Garnier, Jr. of the Jefferson Parish Sheriff's Office was in a marked police unit performing routine duties, including traffic stops, on the West Bank of Jefferson Parish.  According to his trial testimony, at approximately 10:00 a.m. that day, Detective Garnier was traveling south on Destrehan Avenue in Jefferson Parish behind a black Toyota Corolla, which had a brake light that was not illuminating.  He activated his overhead lights and sirens and conducted a traffic stop of the vehicle.  Once the vehicle pulled over, Detective Garnier approached the vehicle and observed a black male sitting in the driver's seat.[FN 1]  Detective Garnier testified that defendant opened his door and had his feet out of the car and on the pavement facing outward toward him.  While defendant was searching for his license, registration, and insurance, Detective Garnier smelled a strong odor of marijuana and also observed a "small green leafy substance" in plain view on the floorboard of the driver's side of the vehicle.  He then asked defendant if he was in possession of any illegal narcotics or weapons, to which defendant replied "No."

> > [FN 1]  In court, Detective Garnier identified defendant as the driver of this vehicle.

> Detective Garnier then asked defendant to exit the vehicle and advised him of his Miranda[FN 2] rights and that he was being detained for "possibly being in possession of marijuana."  For "officer safety," defendant was placed in handcuffs and detained in the back of Detective Garnier's marked patrol unit.  Meanwhile, Detective Kevin McGuffie arrived at the scene.  After Detective Garnier told Detective McGuffie about the green leafy substance found on the floorboard, both officers conducted a search of the vehicle.  As Detective Garnier retrieved a "small bud" of green, leafy substance off the floorboard, he observed an open, brown satchel on the passenger seat.  Inside the satchel was "another large plastic bag containing a green, leafy substance," as well as one black scale, sandwich bags, and

currency wrapped in two rubber bands.  The contents of the satchel were later logged into evidence.

[FN 2]  <u>Miranda v. Arizona</u>, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

Detective Garnier then placed defendant under arrest for possession with intent to distribute marijuana.  He again advised defendant of his <u>Miranda</u> rights, and defendant indicated that he understood them.  Detective Garnier then spoke with defendant.  Detective Garnier testified that defendant claimed ownership of the satchel and the contents inside the satchel.  He also told Detective Garnier that he "only sells narcotics when he's low on money."  During this time, Detective McGuffie counted the currency and then left the scene.  Detective Garnier proceeded to the Detective Bureau where a test confirmed that the substance found was marijuana.  On cross-examination, Detective Garnier testified that he wrote defendant a citation for driving with a broken taillight.

Deputy Kevin McGuffie, an employee of Jefferson Parish Sheriff's Office, testified that on May 9, 2013, as a matter of police protocol and for back-up purposes, he went to the scene where Detective Garnier made the traffic stop of defendant and assisted him in the investigation.[FN 3]  When he arrived on the scene, defendant had already been detained in the rear of a patrol car.  After Detective Garnier informed him of the events, they approached the vehicle together, with Deputy McGuffie on the passenger side.  During his approach, Deputy McGuffie observed the "strong, pungent odor of marijuana emanating from the interior of the vehicle."  When he opened the passenger side door of the vehicle, Deputy McGuffie saw a brown satchel on the passenger's seat.  According to Deputy McGuffie, "[i]nside of that satchel, in plain view, satchel was open, and there was a large, clear, plastic bag containing a green, vegetable matter.  As well as a box of sandwich bags, and a black digital scale, and a large sum of United States currency."  Deputy McGuffie identified State's Exhibits 1 and 2, as all contents of the satchel, including marijuana, that he saw on the traffic stop of May 9, 2013.

[FN 3]  Deputy McGuffie also identified defendant in court.

After the court gave limiting instructions regarding the following "other crimes" testimony, Anne Nini testified that she was the dean of students at John Ehret High School on February 13, 2012.  She and another dean searched defendant[FN 4] in her office, at which time defendant removed a bag of marijuana from his sweatshirt pocket.  Ultimately, defendant removed 28 bags of marijuana from his sweatshirt.  Ms. Nini called the campus officer, Deputy Brian Johnson, who took possession of the marijuana.

[FN 4]  Ms. Nini also identified defendant in court.

Deputy Brian Johnson, an employee of the Jefferson Parish Sheriff's Office, was working as "police on campus" at John Ehret High School on February 13,

2012.  He stated at trial that after encountering Ms. Nini and defendant,[FN 5] he was presented with a bag of what appeared to be a "green leafy substance."  He contacted "crime scene" to have it tested and later logged it into evidence.  Deputy Johnson identified State's Exhibit 5 as the same bag that was given to him on February 13, 2012.[FN 6]    After testing confirmed that the substance was marijuana, Deputy Johnson advised defendant of his <u>Miranda</u> rights.  Defendant then told Deputy Johnson that "that was marijuana, and he said this is the way to make ends meet."[FN 7]

[FN 5]  Deputy Johnson also identified defendant in court.

[FN 6]  The evidence bag lists a total of 28 bags of marijuana.

[FN 7]   This statement was not taped or recorded, but was noted in Deputy Johnson's report.

At trial, Michael Cole, a forensic drug analyst[FN 8] for the Jefferson Parish Sheriff's Office crime lab, explained the process by which substances are tested in their lab.  He analyzed the narcotics in this case and generated a scientific analysis report in connection with his work.[FN 9]   He identified State's Exhibit 2 as the subject of his report which concluded that the vegetative material was marijuana.  He further confirmed that he tested State's Exhibit 5, which also tested positive as marijuana.[FN 10]

[FN 8]  Mr. Cole was accepted by stipulation of the State and defendant as an expert in the field of forensic drug analysis.

[FN 9]  Mr. Cole identified his report as State's Exhibit 6.  He also identified the evidence by the identifying item and lab numbers, as well as his initials on the evidence itself, showing where he sampled it from and that he performed the analysis as well as resealed the bag.

[FN 10]  The State also offered, filed, and introduced into evidence State's Exhibit 4, a copy of the traffic citation issued to defendant; State's Exhibit 5, "the marijuana marked from item number B-12856, of '12", which was admitted over defense counsel's objection; and State's Exhibit 7, the certified copy of defendant's prior conviction from the "incident arising out of February 13th of 2012," which was also accepted into evidence over defense counsel's objection.

Desnee Jones, defendant's girlfriend since 2011, testified at trial on behalf of the defense.  She testified that in 2011, she moved in with defendant and his grandfather.  She did not have a job at that time, but would sell marijuana to make money, an activity she was engaged in prior to meeting defendant.[FN 11]

[FN 11]   At this point in the proceedings, the jury was escorted from the courtroom, and a discussion was held regarding whether Ms. Jones had been advised by independent counsel of the ramifications of making an incriminating statement under oath during the trial.  Counsel was provided to Ms. Jones to explain her rights under the circumstances, and she indicated on the record that she wished to proceed with her testimony.

7

On May 9, 2013, Ms. Jones was attending Delgado Community College in Harvey. That morning, she had received texts from people who wanted to purchase marijuana from her, but she responded to them that she "had to go to school." Defendant drove her to school for a final exam. She "grabbed [her] bag" and "put everything in there." Ms. Jones identified State's Exhibit 1 as the bag she was referring to in her testimony. She clarified that she put "my money," "my sandwich bags," "the rest of the weed," and "my scale" into the bag. Ms. Jones also identified the marijuana that she said she had packaged that morning as State's Exhibit 2. She stated that she placed the entire bag in the front passenger seat. The bag was closed as she rode with defendant. Her plans for the day were to go to school to take an exam, have defendant pick her up from school, sell the marijuana, collect money from the sales, and then purchase more marijuana. After defendant had dropped her off, he called her to ask where the insurance papers for the car were because he had been pulled over. She indicated that the papers were in the glove compartment, and then defendant hung up. The car defendant was driving at the time of the stop was in Ms. Jones' father's name, but it was her car. Ms. Jones said that she gave her testimony because she did not want defendant to go jail for something that she had done.

On cross-examination, Ms. Jones testified that she and defendant had a "serious" relationship and that she loved him. Ms. Jones had no prior convictions and agreed that defendant "would be in more trouble if convicted" than she would be. She was aware that defendant had been previously convicted for possession with intent to distribute marijuana. Ms. Jones said that she left the bag in the car with defendant so that it would be there when he picked her up after her exam. She had planned to drop defendant off before she went to conduct her drug sales.

According to Ms. Jones, defendant did not have a job in May of 2013. Ms. Jones believed that defendant's income came from his grandfather. Selling marijuana was Ms. Jones' major source of income. Ms. Jones said that she has not sold marijuana since the time that defendant was arrested. She admitted that she never told a law enforcement officer that the marijuana found in the car with defendant was hers, and the only other person she talked to about it was defendant's attorney.[11]

### III. Petitioner's Claims

### A. "Other Crimes" Evidence

Petitioner's first claim is that his rights were violated by the admission of "other crimes" evidence. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

In his sole assignment of error, defendant argues that the trial court erred in allowing introduction of "other crimes" evidence concerning his prior conviction of possession of marijuana with intent to distribute, because that evidence was so

---

[11] State v. Gatlin, 164 So. 3d 891, 893-95 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 5.

unduly prejudicial that it outweighed its probative value as to any issue in the charge at trial.

On July 31, 2013, the State filed, pursuant to La. C.E. art. 404, a notice of intent to use evidence of similar crimes committed by defendant. Specifically, the State sought to introduce evidence at trial that "[o]n February 13, 2012, the defendant was arrested for possession with the intent to distribute marijuana near a school under Item B-12856-12. He later plead [sic] guilty as charged to this offense in case 12-1714." The State asserted that the introduction of the evidence would go toward showing "identity, motive, intent, preparation, plan and absence of mistake or accident." No motion in opposition was filed by defendant.

On September 12, 2013, the trial court, relying on this Court's opinion in State v. Temple, 01-655 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, writ denied, 02-0234 (La. 1/31/03), 836 So.2d 58, granted the motion allowing the evidence to be admitted at trial for the purpose of showing intent. The trial court noted that prior to the State's presentation of such evidence at trial, the court would provide the jury with a limiting instruction. Defendant's counsel requested that his objection be noted for the record.

At trial, after the court gave the limiting instruction to the jury, the State presented testimony of Anne Nini, Deputy Brian Johnson, and Michael Cole relating to defendant's previous arrest and subsequent conviction of possession with the intent to distribute marijuana. It also submitted as State's Exhibit 7 the certified copy of defendant's prior conviction from the incident of February 13, 2012.

Generally, evidence of "other crimes" or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1); State v. Davis, 13-237 (La.App. 5 Cir. 10/30/13), 128 So.3d 1162, 1164, writ denied, 13-2751 (La. 5/23/14), 140 So.3d 723. Though such evidence cannot be used to prove the character of a person in order to show that he acted in conformity therewith, it is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. La. C.E. art. 404(B)(1).

In order for "other crimes" evidence to be admitted, one of the above-enumerated factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, 625 So.2d 146, 149 (La. 1993). Additionally, the probative value of such evidence must be weighed against its prejudicial effect. State v. Lisotta, 97-406 (La.App. 5 Cir. 2/25/98), 712 So.2d 527, 530.

The burden is on the defendant to show that he was prejudiced by the trial court's admission of "other crimes" evidence. Temple, 01-655, 806 So.2d at 709. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art 404(B)(1) will not be disturbed. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La. 4/25/03), 842 So.2d 398.

On appeal, defendant specifically asserts that the State failed to show that facts of his prior conviction have independent relevance, that the prejudicial effect

of the evidence outweighed its probative value, and that the admission of the evidence did not amount to harmless error.

### Independent Relevance

Defendant contends on appeal that "No one in good faith could contend that intent or motive were at issue or at play as possible avenues of defense." In this case, however, defendant was charged with possession with intent to distribute marijuana, which requires proof that the defendant knowingly and intentionally possessed the drug and that he or she did so with the specific intent to distribute it. State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 442, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213.

As argued by the State in its Article 404 motion, and correctly acknowledged by the trial in its ruling on that motion, intent is an essential element of the crime of possession with intent to distribute, and evidence of defendant's involvement in prior drug deliveries is an exception to the prohibition against evidence of other crimes.

For example, in State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, writ denied, 00-3137 (La. 11/2/01), 800 So.2d 866, the defendant was charged with possession with intent to distribute heroin. Pre-trial, the defendant filed a failed motion *in limine* to exclude evidence of other crimes, specifically, a portion of his confession where he admitted to distributing drugs in New Orleans. Id. at 784. On appeal, the defendant argued that the trial court erred in admitting the "other crimes" evidence. Id. In finding this assignment to be without merit, this Court reasoned, in relevant part:

> Ordinarily, evidence of other acts of misconduct is inadmissible. However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain exceptions to this rule. Evidence of other crimes may be used to show proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. Other crimes evidence is also admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." La. C.E. art. 404(B)(1).
>
> Intent is an essential element of the crime of possession with intent to distribute heroin. Previous attempts to distribute may be considered in establishing intent.
>
> In Johnson, we held that evidence of a defendant's prior conviction for distribution of cocaine had independent relevance because it satisfied an element of the crime of unlawful possession of a firearm. In this case, the Defendant's admission that he sold drugs in the past has independent relevance in satisfying the intent element of the crime of possession with intent to distribute heroin.

Id. at 785. (Citations omitted.)

Also, in <u>Temple</u>, *supra*, the defendant was convicted of possession with intent to distribute heroin and argued on appeal that the State had failed to prove the element of intent.  <u>Temple</u>, 01-655, 806 So.2d at 702.  In affirming the defendant's conviction, this Court noted the various ways that the element of intent could be established, including "previous attempts to distribute." <u>Id.</u> at 709.  In that case, this Court found that the testimony of a witness that the defendant had previously directed to make deliveries of drugs was a factor that supported defendant's conviction. <u>Id.</u>

Based on the foregoing, we find that the "other crimes" evidence at issue had an independent relevance to show intent pertaining to the current offense and was therefore admissible for this purpose under La. C.E. art. 404(B)(1).

### *Prejudicial effect versus probative value*

Further, defendant argues that the prejudicial effect of the evidence of defendant's prior conviction outweighed its probative value.  Specifically, defendant asserts that the sole purpose and effect of the "other crimes" evidence in this case was merely to portray him in the worst possible light.

This Court considered a similar issue in <u>Temple</u>, *supra*.  In that case, the defendant argued that the probative value of the admission of evidence of his previous involvement with drug deals was outweighed by its prejudicial effect because the evidence "unduly swayed the jury in its determination of guilt because the jury viewed defendant as a 'bad' person." <u>Id.</u> at 709.  The defendant further argued that the other crimes evidence "confused the jury and was a collateral issue which distracted the jury's attention from the main issue." <u>Id.</u>  This Court found these scenarios unlikely, however, based upon the following limiting instruction given by the trial judge immediately preceding the presentation of other crimes evidence, to-wit:

> I'm going to advise you at this time that the witness may testify regarding the Defendant's involvement in the commission of other offenses other than what he is on trial today.  This testimony is to be considered only for a limited purpose.  The sole purpose for which such evidence may be considered is to show guilty knowledge, absence of mistake or accident, intent, system or motive.  Remember, the accused is on trial only for the offense charged.  You may not find him guilty of this offense merely because he might have committed another offense.

<u>Id.</u> at 709.

In the instant case, before Ms. Nini testified, the trial court gave the following similar limiting instruction to the jury prior to the introduction of evidence pertaining to defendant's previous conviction of possession with intent to distribute marijuana, to-wit:

> I'm going to advise you at this time that the witness may testify regarding the defendant's involvement in the commission of other

offenses other than what he is on trial for today. "This testimony is to be considered only for a limited purpose, the sole purpose for which such evidence may be considered is to show guilty knowledge, absence of mistake or accident, intent, system or motive. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he might have committed another offense."

As can been seen, the limiting instruction given by the trial court in <u>Temple</u> is virtually identical to the limiting instruction given by the trial court in the instant case, and, in fact, quotes from <u>Temple</u> in large part.

Thus, we find that the evidence was properly admitted for the purpose of showing intent. We conclude, as this Court did in <u>Temple</u>, that the limiting instruction given prior to the introduction of the evidence gave clear guidance to the jury that the evidence was not to be used to depict defendant as a "bad person" or as a basis to convict him of the current offense just because he was convicted of a prior offense.

***Harmless error***

Further, since we have found no error in the trial court's admitting of such "other crimes" evidence at defendant's trial, defendant's last argument that the admission of the other crimes evidence was an error that was not harmless is without merit.

For the foregoing reasons, defendant's assignment of error, that the trial court erred in allowing introduction of "other crimes" evidence concerning his prior conviction of possession of marijuana with intent to distribute, is without merit.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[13]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." <u>Little v. Johnson</u>, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim simply is not reviewable in this federal proceeding. <u>See, e.g.</u>, <u>Pettus v. Cain</u>, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

---

[12] <u>State v. Gatlin</u>, 164 So. 3d 891, 895-99 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 5.
[13] <u>State v. Gatlin</u>, 178 So. 3d 565 (La. 2015); State Rec., Vol. 1 of 5.

To the extent that petitioner is asserting a federal claim, he fares no better.  Even if petitioner could show that the evidence was in fact improperly admitted, which is questionable for the reasons explained by the Louisiana Fifth Circuit Court of Appeal, federal habeas relief still would not be warranted.  The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); accord Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

Here, it simply cannot be said that the evidence of petitioner's prior crime played a crucial, critical, and highly significant role in his instant conviction.  As an initial matter, it must be noted that the jurors were carefully instructed by the court regarding the limited purposes for which the "other crimes" evidence could be considered,[14] and courts have repeatedly noted that jurors are presumed to follow their instructions.  See, e.g., Jones v. United States, 527 U.S. 373, 394 (1999); United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1349 (5th Cir. 1994).  Further, and more importantly, it must be remembered that (1) petitioner was the sole occupant of the car in which the satchel filled with marijuana and distribution paraphernalia was clearly visible and (2) he admitted ownership of the satchel and its contents, explaining that he "sells narcotics when he's low on money."[15]  Obviously, that compelling evidence was alone sufficient to prove his guilt even without the "other crimes" evidence.

---

[14] The limiting instruction is included in above-quoted excerpt from the Louisiana Fifth Circuit Court of Appeal's opinion, and it can be found in the state court record on pages 313-14 of the trial transcript included in Volume 4.
[15] State Rec., Vol. 4 of 5, transcript of September 13, 2013, pp. 259-60.

13

For all of these reasons, this claim should be denied.

## B.  Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance of counsel at trial.  In the post-

conviction proceedings, the state district court denied that claim, holding:

> The petitioner raises a sole issue in this post-conviction application.  He contends that his attorney, Eusi Phillips, was constitutionally ineffective in his representation during trial.  He states that his attorney failed to investigate witness, compel witnesses, hold the state to its burden of proof, and to file timely motions.

> Analysis
> The state responds that these allegations are not sufficiently specific and do not constitute factual proof as required by LSA-C.Cr.P. art. 926(B)(3).  The state also urges the application of LSA-C.Cr.P. art. 926(E), which provides that the application may be dismissed for failure to comply with pleading requirements.
> The court agrees with the state's objections.  Other than bare allegations, no facts are asserted, much less proven.
> The claim fails on the merits as well.  The petitioner urges relief under the theory that he received ineffective assistance of counsel at trial.  Important precedents address the issue.  Under the well-known standard set forth many years ago in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the petitioner proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.  State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.
> To be successful in arguing ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the Sixth Amendment.  A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.
> Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation.  Significantly, effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.
> On the allegations that are related to trial strategy, the Supreme Court of Louisiana has noted that:

> Further, failure of trial counsel to adequately question alibi witnesses, properly investigate the case, make an opening statement, have defendant take the stand, request particular special charges, and object to certain questions asked of witnesses at trial are all claimed to clearly show that defendant was not adequately and effectively represented at the trial. We do not agree. These charges are either leveled at decisions made by counsel during the heat of trial, the correctness of which cannot be determined by hindsight, or the validity of which is not evident from the record.

State v. Strahan, 325 So.2d 231 (La. 12/8/1975).

After review of the pleadings, the court finds that the petitioner fails to adequately brief his allegations. Furthermore, he has not met his burden of proof that trial counsel was constitutionally ineffective.

Conclusion

Under the authority of LSA-C.Cr.P. art. 930.2, the petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted. In the instant application, the petitioner has not met his heavy burden on his claim.[16]

In denying petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal

then held:

> [W]e agree with the district court. Relator's claims of ineffective assistance are conclusory, non-specific assertions for which he offers no factual support. His claims, in their entirety, consist of: "Applicant's Conviction and Sentence were obtained in violation of the U.S. Const. and LA Const. to the extent his trial counsel failed to (1) Investigate witness; (2) Compel Witnesses; (3) Hold the State to its Burden of Proof; (4) File Timely Motions."
>
> Under the standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2053, 80 L.Ed.2d 674 (1984), a reviewing court must reverse a conviction if the defendant establishes (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.
>
> Relator has offered no proof to satisfy either prong under Strickland. We find no error in the district court's judgment of November 10, 2016.[17]

---

[16] State Rec., Vol. 1 of 5, Order dated November 10, 2016.
[17] Gatlin v. Deville, No. 16-KH-724 (La. App. 5th Cir. Dec. 15, 2016); State Rec., Vol. 1 of 5.

The Louisiana Supreme Court thereafter likewise denied relief, stating simply: "Relator fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2."[18]

As the state courts correctly noted, the clearly established federal law concerning ineffective assistance of counsel claims is founded on the United States Supreme Court's decision in Strickland. In that case, the Supreme Court set forth a two-prong test for evaluating ineffective assistance of counsel claims. Specifically, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 697. The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct

---

[18] State *ex rel.* Gatlin v. State, 239 So. 3d 287 (La. 2018); State Rec., Vol. 1 of 5.

of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim on the merits unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a

17

> rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id.</u> at 105 (emphasis added; citations omitted). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Petitioner first contends that his counsel was ineffective for failing to "Investigate witness."[19]  As an initial matter, however, this Court notes that petitioner does not even identify which witness or witnesses counsel allegedly failed to "investigate."  Further, he has presented no evidence as to what investigative steps counsel actually took or failed to take.  Without such evidence, he cannot show that counsel performed deficiently.  Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

Moreover, in any event, even if petitioner had made that showing, he would then additionally have to prove that prejudice in fact resulted from the inadequate investigation.  To make that showing, he must point to evidence in the record demonstrating that further investigation would have revealed additional information beneficial to the defense.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, petitioner has not even specified what further investigation would have revealed, much less explained how that evidence (whatever it was) would have been beneficial to the defense.  Therefore, his claim necessarily fails.  See, e.g., Cox v. Stephens, 602 Fed. App'x 141, 146 (5th Cir. 2015) (holding that "[b]are allegations" that counsel failed "to make an adequate investigation of potential witnesses" were insufficient to warrant relief); United States v. Lewis, 786 F.2d 1278, 1283 (5th Cir. 1986) ("Since Lewis has not pointed out any evidence which would have been produced by more thorough investigation, much less evidence that would be sufficient to undermine confidence in the outcome of the trial, no prejudice has been shown.").

---

[19] Rec. Doc. 3, p. 17.

Second, petitioner contends that his counsel was ineffective for failing to "Compel Witnesses."[20]  However, once again, petitioner fails even to identify the additional witnesses he believes counsel should have called at trial.  Further, in any event, the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (emphasis added; citations, quotation marks, and brackets omitted); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In this case, petitioner presented no evidence, such as affidavits from the unidentified uncalled witnesses, demonstrating that they were available to testify at the trial and would in fact have testified in a manner beneficial to the defense.  Therefore, he obviously failed to meet his burden of proof with respect to this claim.  See, e.g., Cox v. Stephens, 602 Fed. App'x 141, 146 (5th Cir. 2015) (rejecting claim that counsel was ineffective for failing to call witnesses at trial, noting, "Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified; identify the content of their testimony; or support that their testimony would have

---

[20] Rec. Doc. 3, p. 17.

been favorable"); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner next contends that his counsel was ineffective for failing to "Hold the State to its Burden of Proof."[21]  Petitioner offers no further explanation of this claim, and its meaning is not apparent.  The prosecution clearly offered abundant evidence on the various elements of the crime, and that evidence established petitioner's guilt beyond a reasonable doubt.[22]  Where, as here, a

---

[21] Rec. Doc. 3, p. 17.

[22] In the instant case, petitioner was charged with possession with intent to distribute marijuana.  Regarding such a charge, Louisiana courts have explained:

> To convict a defendant of possession of a controlled dangerous substance with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it.
>
> Intent to distribute a controlled dangerous substance is a specific intent crime.  Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). As a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances of the offense and the defendant's actions.  Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.
>
> The state need not prove the defendant actually possessed the drugs, as evidence of constructive possession is sufficient. Constructive possession is established by evidence that the drugs were within the defendant's dominion and control and that the defendant had knowledge of their presence.  Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge can be inferred from the circumstances.
>
> Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include the defendant's knowledge that drugs

petitioner asserts a wholly unexplained, conclusory claim that his counsel was ineffective, his claim necessarily fails.  See, e.g., Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Lastly, petitioner contends that his counsel was ineffective for failing to "File Timely Motions."[23]    However, that contention clearly fails because petitioner has not specifically identified any necessary and meritorious motions that went unfiled.  See, e.g., United States v. Lewis, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986) ("Lewis has also claimed that [counsel] is to be faulted for filing an inadequate number of pretrial motions. … Lewis has not indicated how other motions would have led to a different result in his case.  Counsel is not required to engage in the filing of futile motions.  The filing of pretrial motions falls squarely within the ambit of trial strategy." (quotation marks omitted)); Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *12 (E.D. La. Oct. 6, 2016) (Petitioner must identify necessary motions that counsel failed to file; "bald and unsupported speculation" that such motions went unfiled "is clearly insufficient to

---

were in the area, the defendant's relationship with other persons found in actual possession, the defendant's access to the area where the drugs were found, evidence of drug paraphernalia or of recent drug use, and the defendant's physical proximity to the drugs.

Five factors have been identified as useful in determining whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance.  The factors include: (1) whether the defendant ever distributed or attempted to distribute the controlled dangerous substances; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use; and (5) whether there were any paraphernalia, such as sandwich bags or scales, evidencing an intent to distribute.

State v. Simon, 245 So. 3d 1149, 1157-58 (La. App. 2d Cir. 2018) (citations omitted).

Here, the state offered evidence showing:  Petitioner was the sole occupant of a vehicle with an open satchel containing twenty-two grams of marijuana packaged in eighteen individually-wrapped bags, a scale, plastic sandwich bags, and $1,288 in small bills bound with rubber bands; he admitted that he owned the satchel and its contents; he admitted that he sold narcotics when he was "low on money"; and he had previously been convicted of possession with intent to distribute marijuana, after having been caught with twenty-eight bags of marijuana and admitting that he sold drugs as a "way to make ends meet."

[23] Rec. Doc. 3, p. 17.

meet a petitioner's burden of proof."), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016); Pichon v. Terrell, Civ. Action No. 11-615, 2012 WL 6569758, at *6 (E.D. La. Oct. 1, 2012) ("[B]ecause petitioner has not identified any other types of pretrial motions which purportedly should have been filed and shown that such motions would have been beneficial to the defense, he has failed to prove either that counsel performed deficiently in this respect or that prejudice resulted."), adopted, 2012 WL 6569802 (E.D. La. Dec. 17, 2012); Lindsey v. Travis, Civ. Action No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007) ("[P]etitioner has made no showing whatsoever that any meritorious pretrial motions were abandoned or left unfiled....  He simply has not shown that counsel's failure to pursue pretrial motions constituted deficient performance in any way, much less that prejudice resulted.").

Based on the foregoing, it is clear that the state court ruling that petitioner failed to meet his burden of proof with respect to his ineffective assistance of counsel claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, petitioner's claim should be denied.

That said, the Court additionally notes that petitioner blames his lack of evidence on the fact that his post-conviction application was summarily denied by the state courts without an opportunity for discovery or evidentiary hearing.  However, that complaint is not cognizable in a federal habeas proceeding.  Louisiana law expressly provides for summary disposition of post-conviction applications:  "If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings."  La. Code Crim. P. art. 929(A).

Further, a state court's decision on such matters is not reviewable in federal court.  As one court has explained:

> To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding.  In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A).  Federal courts "do not sit as a super state supreme court...."  Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine if the state courts properly applied state law.  Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998).  Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254.  Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).  Similarly, the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief.  See, e.g., Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted).  Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.

Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); accord Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992).  Although application of that rule often proves harsh, the Fifth Circuit has emphatically held that it must nevertheless be followed, stating:

> We, as a federal appeals court entertaining a *federal* habeas corpus application, are without jurisdiction to review the constitutionality of [the petitioner's] state postconviction proceedings. Indeed, we are barred from doing so by our "no state habeas infirmities" rule. ... [O]ur hands are tied by the AEDPA, preventing our review of [the petitioner's] attack on his Louisiana postconviction proceedings, so we dutifully dismiss his claim.

Kinsel v. Cain, 647 F.3d 265, 273-74 (5th Cir. 2011) (footnote omitted).

Out of an abundance of caution, the Court further notes that petitioner also is not entitled to a federal evidentiary hearing to secure new evidence at this stage of review. On the contrary, the United States Supreme Court has expressly stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.
> This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.
> Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011) (citations, quotation marks, brackets, and ellipsis omitted).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Jacole Gatlin be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this nineteenth day of December, 2018.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**